# United States Court of Appeals for the Federal Circuit

---

**THAI PLASTIC BAGS INDUSTRIES CO., LTD., MASTER PACKAGING, INC., AND INTEPLAST GROUP, LTD.,**
*Plaintiffs-Appellants,*

v.

**UNITED STATES, POLYETHYLENE RETAIL CARRIER BAG COMMITTEE, HILEX POLY CO., LLC, AND SUPERBAG CORPORATION,**
*Defendants-Appellees.*

---

2014-1237

---

Appeal from the United States Court of International Trade in Nos. 1:11-cv-00408, 1:11-cv-00409, and 1:11-cv-00416, Judge Donald C. Pogue.

---

Decided: December 24, 2014

---

IRENE H. CHEN, Chen Law Group LLC, of Rockville, Maryland, argued for plaintiffs-appellants.

RYAN M. MAJERUS, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee United States. With him on the brief were STUART F. DELERY, Assistant General, JEANNE E. DAVIDSON, Direc-

tor, and PATRICIA M. MCCARTHY, Assistant Director. Of counsel on the brief was SCOTT D. MCBRIDE, Senior Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce, of Washington, DC.

DANIEL L. SCHNEIDERMAN, King & Spalding, of Washington, DC, argued for defendants-appellees Polyethylene Retail Carrier Bag Committee, et al. With him on the brief was JOSEPH W. DORN. Of counsel was STEVEN A. JONES.

--------

Before LOURIE, MOORE, and CHEN, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Thai Plastic Bags Industries Co., Ltd., Master Packaging, Inc., and Inteplast Group, Ltd. (collectively, "TPBI") appeal from the decision of the United States Court of International Trade affirming the Final Results of the sixth administrative review of the antidumping duty order on polyethylene retail carrier bags from Thailand by the United States Department of Commerce ("Commerce") that excluded Blue Corner Rebate revenue from the calculation of the cost of production. *See Thai Plastic Bags Indus. Co. v. United States*, 904 F. Supp. 2d 1326 (Ct. Int'l Trade 2013) ("*Decision*"). Because we conclude that the Court of International Trade did not err in affirming Commerce's decision, we *affirm.*

### BACKGROUND

The Thai government provides rebates through the Blue Corner Rebate ("BCR") program to domestic manufacturers who produce and export products made from raw materials imported by domestic suppliers. TPBI manufactures polyethylene retail carrier bags in Thailand and exports them to the United States. TPBI obtains the polyethylene resin used for manufacturing those bags

from Thai domestic suppliers, who in turn import the raw materials for producing resin and pay the associated import duties. To account for those duties, TPBI pays a compensation fee to the resin suppliers in exchange for tax certificates, which are then provided to the Thai government upon export of the finished bag products in exchange for rebates under the BCR program.

Commerce imposes remedial duties when foreign products are sold at less than fair value, which Commerce determines by comparing the exporter's home market price to the export price, *i.e.*, the U.S. price. 19 U.S.C. § 1677b(a). If sales in the home market are made at prices below the cost of production of the product, however, Commerce will disregard the prices of those sales when determining the antidumping duty margin. 19 U.S.C. § 1677b(b). The calculation of the cost of production is based on the cost of producing the finished product for sale in the home market, and includes the cost of raw materials as well as a catch-all category of general and administrative expenses. *See* 19 U.S.C. § 1677b(b)(3). A lower calculated cost of production results in the inclusion of more sales at lower prices, which means a lower home market price to compare to the export price, and hence a smaller dumping margin and a lesser antidumping duty.

In 2004, Commerce determined that polyethylene retail carrier bags from Thailand were being sold in the United States at less than fair value, *Polyethylene Retail Carrier Bags from Thailand*, 69 Fed. Reg. 34,122 (Dep't of Commerce June 18, 2004) and 69 Fed. Reg. 42,419 (Dep't of Commerce July 15, 2004); the International Trade Commission determined that the domestic industry was materially injured by those imports, 69 Fed. Reg. 47,957 (USITC Aug. 6, 2004); and Commerce accordingly issued an antidumping duty order, 69 Fed. Reg. 48,204 (Dep't of Commerce Aug. 9, 2004). Several years later, Commerce conducted its sixth administrative review of that antidumping duty order, covering the period of August 1, 2009

through July 31, 2010.  For this review, TPBI sought to adjust the calculation of its cost of production downwards by arguing that the Thai BCR program provided compensation for the fees paid to its resin suppliers and therefore that BCR revenue should be subsumed into production costs.  J.A. 891 (Issues and Decision Memorandum for the Final Results).  Because previous attempts to offset its raw material costs had been rejected, TPBI incorporated BCR revenue this time as an adjustment to its general and administrative expenses.  *Id.*  The domestic industry of polyethylene retail carrier bag manufacturers and producers, as represented by the Polyethylene Retail Carrier Bag Committee and its individual members, Hilex Poly Co., LLC and Superbag Corporation, submitted briefs commenting on the administrative review and urging Commerce to deny the offset for BCR revenue to TPBI's general and administrative expenses.

Commerce determined that the BCR program related to export sales rather than production costs, and therefore that adjusting the calculation of TPBI's cost of production to take account of BCR revenue would be inappropriate.  J.A. 893; *see Decision* at 1330.  Commerce noted that BCR revenues are "somewhat analogous" to duty drawbacks, where an adjustment to the U.S. price of the product would correct for an imbalance resulting from import duties that are factored into home market prices but either rebated or not collected for exported products.  J.A. 893; *see generally* 19 U.S.C. § 1677a(c)(1)(B); *Saha Thai Steel Pipe (Pub.) Co. v. United States*, 635 F.3d 1335, 1340–41 (Fed. Cir. 2011).  However, Commerce further noted, TPBI had neither attempted to show a link between the import duties paid and the rebates received from the Thai government, nor claimed BCR revenue as a duty drawback.  J.A. 893; *see Decision* at 1330 n.9; *see also Wheatland Tube Co. v. United States*, 414 F. Supp. 2d 1271, 1276 (Ct. Int'l Trade 2006) (describing test for evaluating duty drawback claims).  Commerce therefore

determined the antidumping margin without an offset for BCR revenue in TPBI's cost of production. TPBI appealed to the Court of International Trade.

The Court of International Trade affirmed Commerce's decision to not deduct BCR revenue from the calculation of the cost of production. *Decision* at 1331. The court agreed that rebates conditioned upon exportation are, by definition, not available for like products sold in TPBI's home market. *Id.* at 1330. The court held that because the record reasonably supported a finding that BCR revenue was export-conditional, substantial evidence supported Commerce's conclusion that BCR revenue was not relevant to the cost of production. *Id.* at 1331.

TPBI timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

We review decisions of the Court of International Trade *de novo*, applying the same substantial evidence standard of review that the Court of International Trade itself applies in reviewing Commerce's determinations. *Global Commodity Grp. LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013); *PPG Indus., Inc. v. United States*, 978 F.2d 1232, 1236 (Fed. Cir. 1992). "Although such review amounts to repeating the work of the Court of International Trade, we have noted that 'this court will not ignore the informed opinion of the Court of International Trade.'" *Diamond Sawblades Mfrs. Coal. v. United States*, 612 F.3d 1348, 1356 (Fed. Cir. 2010) (quoting *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 983 (Fed. Cir. 1994) (emphasizing that the Court of International Trade "reviewed the record in considerable detail" and thus its opinion "deserves due respect")).

TPBI primarily argues that Commerce improperly inflated the calculation of the cost of production by not

factoring in BCR revenue. TPBI contends that because its manufacturing costs include the compensation fees it pays to its suppliers, and the BCR program is intended to offset those compensation fees, BCR revenue should be deducted from its cost of production. TPBI asserts that Commerce usually allows offsets to general and administrative expenses for miscellaneous income when it cannot determine that the revenue is related to a specific manufacturing or selling activity, *e.g.*, commissions or sales of intermediate products. BCR revenue thus should be treated similarly, according to TPBI, because it would be impossible for TPBI to otherwise reasonably account for the revenue. TPBI also contends that denying the adjustment—and refusing to otherwise account for the compensation fee—distorts the dumping margin in contravention of Commerce's mandate to calculate dumping margins accurately. TPBI further asserts that because it has no practical way to obtain the necessary documentation from third party suppliers to provide the requisite link to qualify for duty drawback adjustments, Commerce must adjust its calculation of the cost of production to compensate for the imbalance.

The government responds that the rebates are provided only when a product is exported and only if it was made from imported materials. The government also notes that TPBI's suppliers listed the tax certificate fee separately from the actual cost of materials on sales documents. The government contends that TPBI understood that when it selected its suppliers and paid the separate fee for tax certificates, it would provide the certificates to the Thai government upon export to receive an export-related rebate. Therefore, the government asserts, BCR revenue is tied not to the manufacture or production of merchandise, but to the export. The government also argues that Congress specifically addressed the effect of import duties on exported goods with the duty

drawback provision, but that TPBI did not seek a duty drawback in this case.

The domestic industry adds that TPBI did not request an adjustment to the price of its exported products to counteract its BCR revenue. Because BCR revenues are export-conditional, the domestic industry contends, deducting them from general and administrative expenses would create a mismatch between the calculated cost of production and TPBI's home market price.

We agree with the government and the domestic industry that revenue from the BCR program provided by the Thai government should not be included in the calculation of the cost of production. Even if BCR revenue serves to indirectly compensate for the import duties paid on the raw materials eventually incorporated into TPBI's products, the rebates are strictly export-conditional. Because the calculation of the cost of production is based on producing finished products for sale in the home market, *i.e.*, goods for sale in Thailand, substantial evidence supports that deducting BCR revenue from general and administrative expenses, or any part of cost of production, would be improper.

Commerce has consistently denied offsets to the cost of production for revenue derived from the Thai BCR program. Commerce rejected an adjustment to the calculation of the cost of production in the previous administrative review of the same antidumping duty order, noting that BCR revenues are related to export sales, not to the production of merchandise. *Polyethylene Carrier Bags from Thailand, Fifth Administrative Review*, at 19–20, http://enforcement.trade.gov/frn/summary/thailand/2011-5267-1.pdf (Dep't of Commerce Mar. 8, 2011) (final admin. review) (rejecting adjustment to Cost of Materials for BCR revenues). Commerce also previously rejected a similar adjustment to the cost of production for BCR revenue in another antidumping duty administrative review. *See*

*Canned Pineapple Fruit from Thailand*, at 34, http://enforcement.trade.gov/frn/summary/thailand/03-28802-1.pdf (Dep't of Commerce Nov. 19, 2003) (final admin. review) (noting that Commerce previously disallowed cost adjustment for BCR revenue, *see* 64 Fed. Reg. 69,481, 69,484–85 (Dep't of Commerce Dec. 13, 1999) (final admin. review) (disallowing adjustment to cost of materials for tax certificate revenues)). We therefore find that substantial evidence supported Commerce's decision to deny adjusting the calculation of the cost of production to account for BCR revenue, and that the Court of International Trade did not err in affirming that decision.

Furthermore, while Commerce has stated that TPBI could seek adjustments under the duty drawback provision, despite not being the entity that directly pays the import duties, that is not the issue before us on appeal. Although TPBI claims that it would be impossible for it to obtain documentation to satisfy the link requirement for a duty drawback, there is no evidence in the record that it even attempted to make this argument to Commerce. We therefore do not decide whether TPBI could have received a duty drawback adjustment in a situation with a third party.

CONCLUSION

We have considered the remaining arguments and conclude that they are without merit. For the foregoing reasons, the Court of International Trade's decision affirming Commerce's denial of an offset to TPBI's cost of production for revenue from the Thai government's Blue Corner Rebate program is affirmed.

**AFFIRMED**